UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TONY HAMILTON,

          Plaintiff,                    Case No. 2:23-cv-244

v.                                         Honorable Jane M. Beckering

UNKNOWN PERRY et al.,

          Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a prior Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 5.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schulz and Hoult. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, Voeks, Kelly, and Schroeder: (i) First Amendment retaliation claims against Defendants Perry, Johnson, Lakanen, Zonza, Nichols, Balini, Voeks, Kelly, and Schroeder; (ii) any intended Eighth Amendment claims

premised on verbal harassment; (iii) Eighth Amendment medical care claims against Defendants Watson, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks; and (iv) any intended Fourteenth Amendment due process claims. The following claims remain in the case: (i) First Amendment retaliation claim against Defendant Watson; (ii) Eighth Amendment excessive force claims against Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks; and (iii) Eighth Amendment medical care claims against Defendants Perry, Kelly, and Schroeder. Plaintiff's request for a preliminary injunction (ECF No. 1, PageID.20) will be denied without prejudice.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP personnel: Sergeant Unknown Perry; Correctional Officers Unknown Lakanen, Unknown Johnson, Unknown Zonza, Unknown Nichols, Unknown Balini, Unknown Voeks, Unknown Watson, and Unknown Schulz; Registered Nurse Unknown Kelly; Warden Sarah Schoeder; and Deputy Warden Jerry Hoult. (Compl., ECF No. 1, PageID.1–5.)

In Plaintiff's complaint, he alleges that on October 5, 2023, he was to be escorted to the shower by Defendants Watson and Johnson. (*Id.*, PageID.5.) Prior to being escorted to the shower, Plaintiff "had words" with Defendant Watson because Plaintiff had previously filed a grievance against Watson "for degrading [Plaintiff] and harassing [Plaintiff by] calling [Plaintiff] racial names and threatening . . . to hurt [Plaintiff]." (*Id.*) In response, Defendants Watson and Johnson said "if your Black ass don't like your escort[]s you can go to hell for all we care." (*Id.*) Plaintiff said that he would be filing another grievance "on him" because Watson was "around [Plaintiff]." (*Id.*) Plaintiff then "let" Defendants Watson and Johnson "put handcuffs [and] chains around

2

[Plaintiff's] waist." (*Id.*, PageID.6) When Plaintiff turned around, he saw "many more correctional officers [and a] sergeant[,] such as" Defendants Perry, Zonza, Nichols, Balini, and Voeks at Plaintiff's cell door. (*Id.*) Plaintiff alleges that Defendant Watson had "called on his walkie talkie," stating that they were going to "have a problem escorting this stinking trash to the shower." (*Id.*)

As Plaintiff was going to the shower, "all of the correctional officers [and] sergeant" were "behind [him,] such as" Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks. (*Id.*, PageID.7.) "[Defendant] Watson tripped [Plaintiff] and said [Plaintiff] made a move of resist[a]nce[]." (*Id.*) Plaintiff claims that it is "protocol to have a camera if a[n] inmate pose[s] a threat at any time out of his cell," but that Defendants did not have a camcorder. (*Id.*) Plaintiff alleges that "in the process of all of this going on . . . they all took [him] to the ground in a very forceful way[,] such as" Defendants Perry, Watson, Johnson, Balini, Zonza, Nichols, Voeks, and Lakanen. (*Id.*) Plaintiff claims that "all of these individuals beg[a]n to punch, slap, [and] bang [Plaintiff's] head on [the] solid concret[e] floor" for "like about 20 minutes." (*Id.*, PageID.7–8.) At some point, Defendant Watson "put his knees in the back of [Plaintiff's] neck to where [Plaintiff could not] move [his] head or neck." (*Id.*, PageID.8.) Plaintiff was also "bleeding from [his] mouth [and] . . . going in and out of blacking out." (*Id.*) Thereafter, while being escorted back to his cell, Plaintiff states that "the correctional officers [and] sergeant [were] constantly [y]anking [his] body in many different[] directions on purpose like they didn't know which way to go," and "as they [we]re putting [Plaintiff] back in [his] cell[,] they thr[e]w [Plaintiff] in [his] cell to the floor and [Plaintiff] bust [sic] [his] face on the ground hard cracking [his] teeth." (*Id.*, PageID.9.) Plaintiff then turned around to "face them before they shut [his] cell door," and he "end[ed] up spitting out blood," but Defendant Perry "end[ed] up shutting [the] cell door in a hurry thinking [Plaintiff] was spitting at them." (*Id.*) It was also at this point that Defendant Perry told Defendant Lakanen to get

3

the camera "so they recorded that [Plaintiff] was being assaultive and resistance [sic] towards them." (*Id.*) Plaintiff requested medical attention from "many other correctional officers . . . as well as from [Defendant] Perry," but was denied. (*Id.*, PageID.12.) Plaintiff states that he was then left in his cell with handcuffs and belly chains from 2:50 p.m. to 11:50 p.m. (*Id.*, PageID.10.)

At around 3:30 p.m., Defendant Kelly conducted a medical round in Plaintiff's unit, and Plaintiff "yelled out to get her attention." (*Id.*, PageID.12.) Defendant Kelly told Plaintiff she was "not able to do nothing [sic] for you[;] you brought this on yourself 'right.'" (*Id.* (emphasis omitted).) Defendant Perry was escorting Defendant Kelly around the unit, and they both "walked off from [Plaintiff's] cell smiling at [Plaintiff] and saying what a piece of work." (*Id.*) Plaintiff alleges that he did not receive "the proper medical attention [he] needed." (*Id.*, PageID.12–13.)

The next day, October 6, 2023, Plaintiff was escorted to the medical department by Defendants Schulz, Schroeder, and Hoult. (*Id.*, PageID.14.) Defendants Schroeder and Schulz "made the comment 'wow' looks like you had a long night how many rounds you lasted in the fight." (*Id.* (emphasis omitted).) At the medical department, Defendant Schroeder "told all of the nurses . . . don't document shit period[;] give him a couple of band-aids and send his ass on his way." (*Id.*) Plaintiff states "that is exactly what happened," explaining that the nurses "prolonged the time like they was [sic] tending to [Plaintiff's] injuries but didn't treat [the] injuries at all." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment by retaliating against him; the Eighth Amendment by verbally harassing him, using excessive force against him, and denying him adequate medical care; and the Fourteenth Amendment. (*Id.*, PageID.15.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.20–21.)

4

**II.      Request for a Preliminary Injunction**

In Plaintiff's complaint, when setting forth the relief that he seeks in this suit, Plaintiff states that he seeks a preliminary injunction. (Compl., ECF No. 1, PageID.20.) Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Although the Court makes no final determination on this issue, it is not at all clear from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his claims.

Accordingly, Plaintiff's request for a preliminary injunction (ECF No. 1, PageID.20) will be denied without prejudice.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation Claims

Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him. (*See* Compl., ECF No. 1, PageID.15.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Defendant Watson

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. In this action, Plaintiff references filing a grievance about Defendant Watson prior to October 5, 2023, and he alleges that on October 5, 2023, he advised Defendant Watson that he would be filing another grievance because Watson was "around [Plaintiff]." (Compl., ECF No. 1, PageID.5.) Shortly thereafter, Plaintiff alleges that while Defendant Watson was escorting Plaintiff to the shower, Defendant Watson "tripped [Plaintiff] and said [Plaintiff] made a move of resist[a]nce[]." (*Id.*, PageID.7.) Although Plaintiff has by no means proven his First Amendment retaliation claim against Defendant Watson, and there is some

7

question as to whether Plaintiff's grievance about Watson being "around [Plaintiff]" would constitute a non-frivolous grievance, at this stage of the proceedings, the Court will not dismiss Plaintiff's retaliation claim against Defendant Watson.

### 2. Defendants Perry, Johnson, Lakanen, Zonza, Nichols, Balini, Voeks, Kelly, Schulz, Schroeder, and Hoult

As to all of the other named Defendants, although Plaintiff indicates that he is bringing First Amendment retaliation claims against them (*see id.*, PageID.15), Plaintiff fails to allege any *facts* to suggest that the other named Defendants retaliated against him. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that the other Defendants were motivated by any protected conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims against Defendants Perry, Johnson, Lakanen, Zonza, Nichols, Balini, Voeks, Kelly, Schulz, Schroeder, and Hoult will be dismissed.

8

### B. Eighth Amendment Claims

#### 1. Verbal Harassment

The Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding verbal harassment by Defendants. (*See e.g.*, Compl., ECF No. 1, PageID.5 (alleging that Defendant Watson used "degrading" and "harassing" language, including "racial names" and threats).)

The Court does not minimize Plaintiff's experience; however, although unprofessional, allegations of verbal harassment or taunts by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Allegations of verbal harassment also do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment.

#### 2. Excessive Force

Plaintiff alleges that Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks used excessive force against him. (*See, e.g.*, Compl., ECF No. 1, PageID.7–8.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and

discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges, among other things, that while he was being escorted to the shower on October 5, 2023, Defendant Watson "tripped [Plaintiff] and said [Plaintiff] made a move of resist[a]nce[]." (Compl., ECF No. 1, PageID.7.) Plaintiff alleges that "in the process of all of this going on . . . they all took [him] to the ground in a very forceful way[,] such as" Defendants Perry, Watson, Johnson, Balini, Zonza, Nichols, Voeks, and Lakanen. (*Id.*) Plaintiff claims that "all of these individuals beg[a]n to punch, slap, [and] bang [Plaintiff's] head on [the] solid concret[e] floor" for "like about 20 minutes." (*Id.*, PageID.7–8.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff's allegations lack specificity as to what each Defendant individually did, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks on initial review.

### 3.  Medical Care

Plaintiff also alleges that Defendants violated his Eighth Amendment rights by interfering with his receipt of adequate medical care. (*See id.*, PageID.7.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's

11

failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

12

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### a.   Objective Component

Plaintiff alleges that he had "black eyes, [a] split[] chin, busted nose, and cracked teeth," and that at one point he was "bleeding from [his] mouth [and] . . . going in and out of blacking out." (Compl., ECF No. 1, PageID.8, 15.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### b.   Subjective Component

Plaintiff alleges that after the October 5, 2023, incident with Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks, Plaintiff requested medical attention from "many other correctional officers . . . as well as from [Defendant] Perry," but was denied. (*Id.*, PageID.12.) Plaintiff further alleges that at around 3:30 p.m., Defendant Kelly conducted a medical round in Plaintiff's unit, and Plaintiff "yelled out to get her attention." (*Id.*) Defendant Kelly told Plaintiff she was "not able to do nothing [sic] for [him;] you brought this on yourself 'right.'" (*Id.*) Defendant Perry was escorting Defendant Kelly around the unit, and they both "walked off from [Plaintiff's] cell smiling at [Plaintiff] and saying what a piece of work." (*Id.*) Plaintiff alleges that he did not receive "the proper medical attention [he] needed." (*Id.*, PageID.12–13.) The next day, October 6, 2023, Plaintiff was escorted to the medical department by Defendants Schulz, Schroeder, and Hoult. (*Id.*, PageID.14.) At the medical department, Defendant Schroeder "told all of the nurses . . . don't document shit period[;] give him a couple of band-aids and send his ass on his way." (*Id.*)

### 1.     *Defendants Watson, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks*

As to Defendants Watson, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks, Plaintiff alleges no facts showing that these Defendants were personally involved in the alleged denial of his receipt of medical care. Although Plaintiff alleges that he requested medical attention from "many other correctional officers," "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (citation omitted)). Accordingly, any intended Eighth Amendment medical care claims against Defendants Watson, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks will be dismissed.

### 2.     *Defendants Schulz and Hoult*

With respect to Defendants Schulz and Hoult, Plaintiff alleges that these Defendants, along with Defendant Schroeder, escorted Plaintiff to the medical department on October 6, 2024. (Compl., ECF No. 1, PageID.14.) Besides escorting Plaintiff to the medical department, Plaintiff does not allege that Defendants Schulz and Hoult had any involvement in his receipt of medical care once Plaintiff reached the medical department. Under these circumstances, Plaintiff fails to show that Defendants Schulz and Hoult engaged in any active unconstitutional conduct, let alone that they were involved in the denial of Plaintiff's receipt of medical care. Therefore, Plaintiff fails to state a claim against Defendants Schulz and Hoult. *See Grinter v. Knight*, 532 F.3d 567, 575–

76 (6th Cir. 2008) (discussing that a claimed constitutional violation must be based upon active unconstitutional behavior); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

### 3. *Defendants Perry, Kelly, and Schroeder*

As to Defendants Perry, Kelly, and Schroeder, Plaintiff alleges that each of these Defendants had some personal involvement in his alleged denial of medical care or his receipt of inadequate medical care. Therefore, at this stage of the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment medical care claims against Defendants Perry, Kelly, and Schroeder.

### C.     Fourteenth Amendment Claims

Plaintiff references the Fourteenth Amendment when discussing the claims that he brings in this suit. (*See* Compl., ECF No. 1, PageID.15 (referencing trying to use the grievance system and setting forth the harm that resulted from Defendants' actions).) The Court construes Plaintiff's complaint to raise a Fourteenth Amendment procedural due process claim regarding his use of the grievance procedure, as well as a Fourteenth Amendment substantive due process claim.

### 1.     **Procedural Due Process Claim**

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F.

15

App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, any intended procedural due process claim regarding Plaintiff's use of the grievance procedure will be dismissed.

### 2.     **Substantive Due Process Claim**

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the Court does not minimize Plaintiff's experience; however, the facts alleged in the complaint fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-

16

cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016). Therefore, any intended substantive due process claim will be dismissed.

Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Schulz and Hoult will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, Voeks, Kelly, and Schroeder: (i) First Amendment retaliation claims against Defendants Perry, Johnson, Lakanen, Zonza, Nichols, Balini, Voeks, Kelly, and Schroeder; (ii) any intended Eighth Amendment claims premised on verbal harassment; (iii) Eighth Amendment medical care claims against Defendants Watson, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks; and (iv) any intended Fourteenth Amendment due process claims. The following claims remain in the case: (i) First Amendment retaliation claim against Defendant Watson; (ii) Eighth Amendment excessive force claims against Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks; and (iii) Eighth Amendment medical care claims against Defendants Perry, Kelly, and Schroeder. Plaintiff's request for a preliminary injunction (ECF No. 1, PageID.20) will be denied without prejudice.

An Order consistent with this Opinion will be entered.

Dated: September 24, 2024　　　　　　　　/s/ Jane M. Beckering
　　　　　　　　　　　　　　　　　　　　Jane M. Beckering
　　　　　　　　　　　　　　　　　　　　United States District Judge