UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TONY HAMILTON #941610,

Plaintiff,

v.

UNKNOWN PERRY, et al.,

Defendants.
_______________________________/

Case No. 2:23-cv-244

Hon. Jane M. Beckering
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R. & R.) addresses the Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies prior to filing this lawsuit. (ECF No. 28.) Plaintiff has not responded to the Defendants' motion.

State prisoner – Tony Hamilton – filed a verified complaint under 42 U.S.C. § 1983 alleging that Defendants violated his First and Eighth Amendment rights while he was incarcerated at Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. (ECF No. 1.) Hamilton sued the following 12 MBP personnel: Sergeant Unknown Perry; Correctional Officers Unknown Lakanen, Unknown Johnson, Unknown Zonza[1], Unknown Nichols, Unknown Balini, Unknown

---

1 The Plaintiff and the Court refer to this Defendant as Defendant "Zonza," however in their motion for summary judgment, the Defendants refer to this

Voeks, Unknown Watson, and Unknown Schulz; Registered Nurse Unknown Kelly; Warden Sarah Schoeder; and Deputy Warden Jerry Hoult. (ECF No. 1, PageID.1–5.)

Hamilton's allegations were summarized in the Court's September 24, 2024, Screening Opinion. (ECF No. 13.) There, the Court provides in pertinent part:

> In Plaintiff's complaint, he alleges that on October 5, 2023, he was to be escorted to the shower by Defendants Watson and Johnson. (Id., PageID.5.) Prior to being escorted to the shower, Plaintiff "had words" with Defendant Watson because Plaintiff had previously filed a grievance against Watson "for degrading [Plaintiff] and harassing [Plaintiff by] calling [Plaintiff] racial names and threatening . . . to hurt [Plaintiff]." (Id.) In response, Defendants Watson and Johnson said "if your Black ass don't like your escort[]s you can go to hell for all we care." (Id.) Plaintiff said that he would be filing another grievance "on him" because Watson was "around [Plaintiff]." (Id.) Plaintiff then "let" Defendants Watson and Johnson "put handcuffs [and] chains around [Plaintiff's] waist." (Id., PageID.6) When Plaintiff turned around, he saw "many more correctional officers [and a] sergeant[,] such as" Defendants Perry, Zonza, Nichols, Balini, and Voeks at Plaintiff's cell door. (Id.) Plaintiff alleges that Defendant Watson had "called on his walkie talkie," stating that they were going to "have a problem escorting this stinking trash to the shower." (Id.)
>
> As Plaintiff was going to the shower, "all of the correctional officers [and] sergeant" were "behind [him,] such as" Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks. (Id., PageID.7.) "[Defendant] Watson tripped [Plaintiff] and said [Plaintiff] made a move of resist[a]nce[]." (Id.) Plaintiff claims that it is "protocol to have a camera if a[n] inmate pose[s] a threat at any time out of his cell," but that Defendants did not have a camcorder. (Id.) Plaintiff alleges that "in the process of all of this going on . . . they all took [him] to the ground in a very forceful way[,] such as" Defendants Perry, Watson, Johnson, Balini, Zonza, Nichols, Voeks, and Lakanen. (Id.) Plaintiff claims that "all of these individuals beg[a]n to punch, slap, [and] bang [Plaintiff's] head on [the] solid concret[e] floor" for "like about 20 minutes." (Id., PageID.7–8.) At some point, Defendant Watson "put his knees in the back of [Plaintiff's] neck to where [Plaintiff could not] move [his] head or neck." (Id., PageID.8.) Plaintiff was also "bleeding from [his] mouth

Defendant as "Zorza" (ECF No. 28, PageID.144.). For the sake of clarity and consistency, the Court will continue to refer to this Defendant as "Zonza."

[and] . . . going in and out of blacking out." (Id.) Thereafter, while being escorted back to his cell, Plaintiff states that "the correctional officers [and] sergeant [were] constantly [y]anking [his] body in many different[] directions on purpose like they didn't know which way to go," and "as they [we]re putting [Plaintiff] back in [his] cell[,] they thr[e]w [Plaintiff] in [his] cell to the floor and [Plaintiff] bust [sic] [his] face on the ground hard cracking [his] teeth." (Id., PageID.9.) Plaintiff then turned around to "face them before they shut [his] cell door," and he "end[ed] up spitting out blood," but Defendant Perry "end[ed] up shutting [the] cell door in a hurry thinking [Plaintiff] was spitting at them." (Id.) It was also at this point that Defendant Perry told Defendant Lakanen to get the camera "so they recorded that [Plaintiff] was being assaultive and resistance [sic] towards them." (Id.) Plaintiff requested medical attention from "many other correctional officers . . . as well as from [Defendant] Perry," but was denied. (Id., PageID.12.) Plaintiff states that he was then left in his cell with handcuffs and belly chains from 2:50 p.m. to 11:50 p.m. (Id., PageID.10.)

At around 3:30 p.m., Defendant Kelly conducted a medical round in Plaintiff's unit, and Plaintiff "yelled out to get her attention." (Id., PageID.12.) Defendant Kelly told Plaintiff she was "not able to do nothing [sic] for you[;] you brought this on yourself 'right.'" (Id. (emphasis omitted).) Defendant Perry was escorting Defendant Kelly around the unit, and they both "walked off from [Plaintiff's] cell smiling at [Plaintiff] and saying what a piece of work." (Id.) Plaintiff alleges that he did not receive "the proper medical attention [he] needed." (Id., PageID.12–13.)

The next day, October 6, 2023, Plaintiff was escorted to the medical department by Defendants Schulz, Schroeder, and Hoult. (Id., PageID.14.) Defendants Schroeder and Schulz "made the comment 'wow' looks like you had a long night how many rounds you lasted in the fight." (Id. (emphasis omitted).) At the medical department, Defendant Schroeder "told all of the nurses . . . don't document shit period[;] give him a couple of band-aids and send his ass on his way." (Id.) Plaintiff states "that is exactly what happened," explaining that the nurses "prolonged the time like they was [sic] tending to [Plaintiff's] injuries but didn't treat [the] injuries at all." (Id.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment by retaliating against him; the Eighth Amendment by verbally harassing him, using excessive force against him, and denying him adequate medical care; and the Fourteenth Amendment. (Id., PageID.15.) Plaintiff seeks declaratory

and injunctive relief, as well as compensatory and punitive damages. (Id., PageID.20–21.)

In the same Opinion, the Court dismissed for failure to state a claim: (1) claims Schulz and Hoult under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c); (2) First Amendment retaliation claims against Perry, Johnson, Lakanen, Zonza, Nichols, Balini, Voeks, Kelly, and Schroeder; (3) any intended Eighth Amendment claims premised on verbal harassment; (4) Eighth Amendment medical care claims against Watson, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks; and (5) any intended Fourteenth Amendment due process claims. (ECF No. 13, PageID.106.)

As a result, the following claims remain in the case: (1) the First Amendment retaliation claim against Corrections Officer (CO) Watson; (2) the Eighth Amendment excessive force claims against CO Watson, Sergeant (Sgt.) Perry, CO Johnson, CO Lakanen, CO Zonza, CO Nichols, CO Balini, and CO Voeks; and (3) the Eighth Amendment medical care claims against Sgt. Perry, Registered Nurse (RN) Kelly, and Warden Schroeder. (*Id.*)

The remaining claims are summarized in the table below.

| Claim | Defendant(s) | Allegations | Date |
|---|---|---|---|
| 1 | Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks | 8th Amendment excessive force claim. Plaintiff alleges that these Defendants assaulted him while he was in the shower and while he was being taken back to his cell. | Oct. 5, 2023 |
| 2 | Watson | First Amendment retaliation claim. Plaintiff alleges that Watson retaliated against him in retaliation for grievances and complaints. | Oct. 5, 2023 |
| 3 | Suvanto (Kelly), Perry | 8th Amendment deliberate indifference / denial of care claim. Plaintiff alleges that Defendants failed to treat Plaintiff after he was injured in the assaults alleged in Count 1. | Oct. 5, 2023 |

| Claim | Defendant(s) | Allegations | Date |
|---|---|---|---|
| 4 | Shroeder | 8th Amendment deliberate indifference / denial of care claim. Plaintiff alleges that Schroeder told staff in the medical department on not document Plaintiff's injuries, and to give him only and band-aid and send him on this way. | Oct. 6, 2023 |

On November 22, 2024, the remaining 10 Defendants – Tanner Watson, Collin Perry, Carl Johnson, Aaron Lakanen, Troy Zorza, Phillip Nichols, Carl Balini, Jeremy Voeks, Kelly Suvanto[2], and Sarah Schroeder – moved for summary judgment on the basis of exhaustion. (ECF No. 28.) The Defendants argue that Hamilton failed to exhaust any of his claims against the Defendants mainly because Hamilton failed to name Defendants in his Step I grievances and the grievances were rejected at Step I or at Step II rather than being addressed on the merits. (*Id.*, PageID.157–60.)

In the opinion of the undersigned, there is a genuine issue of material fact as to whether Hamilton properly exhausted his administrative remedies in relation to: (1) his First Amendment retaliation claim against Defendant Watson (Claim 2); (2) his Eighth Amendment excessive force claim against Defendants Watson, Perry, Johnson, Lakanen, Zonza, Nichols, Balini, and Voeks (Claim 1); and (3) his Eighth Amendment deliberate indifference / denial of medical care claims against Defendants Perry and Suvanto (Claim 3). It is respectfully recommended that the Court **deny** the Defendants' motion for summary judgment as to these claims.

---

[2] Hamilton's initial complaint and the Court's September 24, 2024 Screening Opinion refer to "Registered Nurse Unknown Kelly" as a party in the case. The Defendants identify this individual as Kelly Suvanto, RN. (ECF No. 28, PageID.144; ECF No. 29, PageID.150.) The undersigned will henceforth refer to "Unknown Kelly" as "Suvanto" for clarity.

However, in the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Hamilton failed to properly to properly exhaust his administrative remedies for his Eighth Amendment deliberate indifference / denial of medical care claim against Defendant Schroeder. It is respectfully recommended that the Court **grant** summary judgment with respect to this claim – Claim 4 in the table above.

If the Court accepts this recommendation, Warden Schroeder will be dismissed from the case.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

[3] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

**III. Exhaustion of Administrative Remedies**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212–16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218–19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.*, ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.*,¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.*,¶ Y. The Policy Directive

also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.*, ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.*, ¶ DD. The respondent at Step II is designated by the policy. *Id.*,¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.*, ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.*, ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.*, ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing

grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693–94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693–94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13–17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[4] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

> prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017).[5]

**IV. Analysis**

The Defendants argue that Hamilton failed to properly exhaust administrative remedies for claims arising out of the October 5 and October 6, 2023 incidents. (ECF No. 29, PageID.157.) Although Hamilton did not respond to the Defendants' motion, Hamilton did address exhaustion in his verified complaint. (ECF No. 1, PageID.18.) Hamilton states that he attempted to resolve the problem on October 10, October 11, and October 12, 2023, but asserts that the "Grievance Coordinator sent [him] a memo that he could not process [his] grievance saying that the incident was not grievable and was denied." (*Id.*)

The Defendants provided Hamilton's Step III Grievance Report with their motion for summary judgment. (ECF No. 29-3, PageID.175–76.) The affidavit included with the report states that it "is taken from the Michigan Department of

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

Corrections' (MDOC) database that tracks all prisoner/parolee grievances filed at Step II, which have been responded to at Step III." (*Id.*, PageID.173–74.) The Defendants identify four grievances as relevant to Hamilton's complaint: MBP-23-10-1034-17i (MPB-1034), MBP-23-10-1035-26a (MPB-1035), MBP-23-10-1036-17b (MBP-1036), and MBP-23-10-1037-28a (MBP-1037). (ECF No. 29, PageID.152–53.)

Grievances relevant to the October 5 and October 6, 2023 incidents are highlighted in yellow on the two-page summary from the Grievance Report shown below:

**MDOC Prisoner Step III Grievance Report**

1/1/2017 to Present

**Prisoner #:** 941610 **Last Name:** Hamilton **First Name:** Tony

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/14/2023 | MBP-23-10-1056-17B | 17B | 18 | 10/24/2023 | ☐ | ☐ | ☑ | ☐ | ☑ | 12/28/2023 |
| Notes: | | | | | | | | | | |
| 11/27/2023 | MBP-23-10-1035-26A | 26A | 18 | 10/19/2023 | ☐ | ☐ | ☑ | ☐ | ☑ | 12/6/2023 |
| Notes: | | | | | | | | | | |
| 11/27/2023 | MBP-23-10-1034-17I | 17I | 18 | 10/19/2023 | ☐ | ☐ | ☑ | ☐ | ☑ | 12/6/2023 |
| Notes: | | | | | | | | | | |
| 11/27/2023 | MBP-23-10-1036-17B | 17B | 18 | 10/19/2023 | ☐ | ☐ | ☑ | ☐ | ☑ | 12/6/2023 |

(ECF No. 29-3, PageID.175 (first page of Step III Grievance Report).)



MDOC Prisoner Step III Grievance Report

1/1/2017 to Present

Prisoner #: 941610 Last Name: Hamilton First Name: Tony

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/20/2023 | MBP-23-10-0977-17B | 17B | 18 | 10/4/2023 | ☐ | ☐ | ☑ | ☐ | ☑ | 11/30/2023 |
| Notes: | | | | | | | | | | |
| 11/20/2023 | MBP-23-10-1037-28A | 28A | 18 | 10/19/2023 | ☐ | ☐ | ☐ | ☑ | ☑ | 11/30/2023 |
| Notes: | | | | | | | | | | |
| 2/6/2023 | ICF-23-01-0036-28B | 28B | 14 | 1/10/2023 | ☐ | ☐ | ☐ | ☑ | ☑ | 2/23/2023 |

(*Id.*, PageID.176 (second page of Step III Grievance Report).)

**A. MBP-1034**

Defendants argue that Hamilton did not properly exhaust his claims through MBP-1034 because the grievance (1) failed to name Defendants Watson, Lakanen, Johnson, Zorza, Nichols, Balini, Voeks, or Schroeder, and (2) was rejected as untimely at Step II. (ECF No. 29, PageID.151, 158.)

At Step I, Hamilton grieved Defendants Perry and Suvanto (Kelly) for denial of medical attention on October 5 and October 6, 2023. (ECF No. 29-3, PageID.185.) MBP-1034 stated:

Date Received at Step I 10/19/2023 OCT 19 2023 Grievance Office Marquette Branch Prison Grievance Identifier: MBP 23 10 1034 17 I

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Tony Hamilton | 941610 | MBP | D-B6 | 10-5-23 | 10-6-23 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? I talk to 10-5-23 If none, explain why. the P.C — But nothing was resolve

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. on the above Date 10-5-23 in time 2:30 to 11:30 I was Denied medical attention by sgt perry after the following officers assault/attack me. sgt perry C.O lakanen C.O Johnson C.O zonza C.O nichols C.O Vocks C.O Balini. at Between 2:30 in 3:30 sgt perry approach my cell with nurse Kelly laughing at me telling nurse Kelly let him BleeD BlooD out from his injuries, this negligence in violation of Humane treatment and living condition unDer P.D 03 03 130 poragraph H state all seriously ill or injured prisoner shall receive prompt medical attention as set forth in PD 03 03 125 medical emergencies appropriate staff shall be informed of any special neeD of prisoner due to Physical or mental problem in P.D 03 03 130 Poragrph K1 in K3 state willfut in fliction of mental Distress Degradation or Humiliation any act or lack of care whether by willful act or neglect that injures or significantly impairs the health of any prisoner from this attack/assault I suffer Busted nose two Black eyes a split chin and crack teeth the following Day at 10-6-23 8:30 to 10:00 I was escorted to meDical for my injuries

Tony Hamilton
Grievant's Signature

(*Id.*)

MBP-1034 was denied at Step I. (*Id.*, PageID.186.) The Respondent found that medical attention "was provided immediately and on multiple occasions" following the Hamilton's altercation with COs and that "Hamilton continued to act aggressively causing a delay in treatment." (*Id.*) The grievance response was returned to Hamilton on October 26, 2023. (*Id.*)

At Step II, MBP-1034 grieved both the decision to deny his Step I grievance and the denial of medical attention by Perry and Suvanto. (*Id.*, PageID.184.) The Step II appeal was received by the Respondent on either November 14 or November 15, 2023. (*Id.*) The Step II appeal was rejected as "untimely" because it was received more than ten days after the Step I grievance response was returned to Hamilton

without valid justification for the failure to submit a timely appeal. (*Id.*) The Step II appeal and Response are shown below:

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Hamilton | 941610 | MBP | DB06 | 10-5-23 | 11-7-23 |

**STEP II** — Reason for Appeal [redacted] a Decision was mode to Deni my Step 1 grievance, at no time did I refuse or Deni medical attention. I suffer multiple injurie from the incident. Sgt perry was one of the correctional officeers on top of me throwing close fist punches. Sgt Perry instructed nures Kelly to let Hamilton Bleed out. So Sgt Perry refuse/Deni me medical attention.

**STEP II** — Response

Date Received by Step II Respondent: 11/15/2023

A review of your Step II appeal has been completed. I have also reviewed your Step I grievance and the response. You did not submit your appeal within the time limits listed on the appeal form or within the time limits set forth in PD 03.02.130. "Prisoner/Parolee Grievances". Paragraph JJ states in part "A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response within ten business days after receipt of the Step I grievance". Records indicate that the Step I response had been returned to you on 10/26/2023 and the Step II was received on 11/14/2023. You have provided no valid justification for your failure to submit your appeal within the time constraints clearly stated in the aforementioned policy, therefore it is considered untimely and will be returned to you per policy direction and no response will be forthcoming at this Step.

Sarah Schroeder, Warden — Respondent's Name (Print)
[signature] — Respondent's Signature
11-15-23 — Date

Date Returned to Grievant: 11/16/2023

(*Id.*)

At Step III, the MBP-1034 appeal concerned the denial of the Step II appeal as untimely. (*Id.*) However, rather than merely upholding the rejection of Step II as untimely, the Reviewer appeared to address Hamilton's claims on the merits. (*Id.*) The Reviewer explained that he denied MBP-1034 at Step III, finding that Hamilton's "issue was in fact considered, investigated, and a proper decision was rendered." (*Id.*, PageID.183.)

Hamilton's Step III appeal and the subsequent Decision are shown below:


**STEP III** — Reason for Appeal quentin Bolton the grievance CoorDinator ref use to acknowlege my grievance Denying in rejecting everything I to his office. quentin Bolton said my grievance was untimely But the Date shaw 11-7-23

(*Id.* (Step III appeal).)

**STEP III GRIEVANCE DECISION**

Rec #: 14722
171

| | | |
|---|---|---|
| To Prisoner: | Hamilton | #: 941610 |
| Current Facility: | MBP | |
| Grievance Identifier: | MBP-23-10-1034-17I | |
| Step III Received: | 11/27/2023 | |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

**Richard D. Russell, Manager Grievance Section, Office of Legal Affairs**

**Date Mailed:** DEC 06 2023

(*Id.*, PageID.183 (Step III Greivance Decision).)

Ultimately, the purpose of the grievance system is to alert prison officials to problems within their facilities. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The PD 03.02.130 ¶ S states that to provide adequate notice to officials, the grievant must provide facts underlying the issue being grieved including the "names of all those involved" at Step I. Issues within the scope of review at Step II and Step III appeals are limited to those issues addressed on the merits at each step of the grievance process. *See id.*; *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).

Additionally, "proper exhaustion" requires that the plaintiff comply with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Woodford*, 548 U.S. at 90–95. MDOC policy provides that a grievance shall be rejected if filed in an untimely manner. PD 03.02.130 ¶ (J)(5).

Grievances are considered filed on the date they are received by the Department and must be stamped as such. *Id.*, ¶ (T). To be considered timely, Step II appeals must be received by the Grievance Coordinator within ten business days after the grievant received a Step I response or, if no response is received, within ten business days after the date the response was due. *Id.*, ¶ (EE).

In the opinion of the undersigned, the Defendants have failed to show that no genuine issue of material fact remains with regard to Hamilton's exhaustion of administrative remedies for his Eighth Amendment denial of medical care claims against Defendants Perry and Suvanto through MBP-1034. Grievance MBP-1034 was principally concerned with the denial of medical care. Hamilton grieved Perry and Suvanto in relation to this alleged denial of care, alerting the MDOC to the alleged problem. Although MBP-1034 was rejected as untimely at Step II, that rejection was not upheld at Step III. Instead, at Step III, the MDOC appeared to address the merits of Hamilton's issue. When prison officials waive address a grievance appeal on the merits, existing procedural irregularities in that grievance appeal are considered waived. *See Mattox*, 851 F.3d at 590−91 (citing *Reed-Bey*, 603 F.3d at 325). Thus, the undersigned concludes that a genuine issue of material fact remains with regard to the issues Hamilton raised in MBP-1034 against Defendants Perry and Suvanto. Accordingly, the undersigned recommends that the Court deny Defendants' motion with respect to the allegations in Claim 3.

In contrast, the Defendants have shown that Hamilton failed to exhaust his denial of medical care claims against the remaining Defendants. Although Hamilton

mentioned Defendants Lakanen, Johnson, Zonza, Nichols, Voeks, and Balini in his description of the altercation that necessitated his access to medical care at Step I, Hamilton did not suggest that any of these individuals denied him medical care. Hamilton failed to grieve Defendants Schroeder and Watson in MBP-1034 at any stage for any claim. Accordingly, the undersigned concludes that Defendants have met the Rule 56 standard with respect to any claims against Defendants Lakanen, Johnson, Zonza, Nichols, Voeks, Balini, Schroeder, and Watson in MBP-1034.

**B. MBP-1035**

Defendants argue that Hamilton did not properly exhaust his claims through MBP-1035 because the grievance (1) failed to name Defendants Watson, Suvanto, or Schroeder and (2) was rejected as untimely at Step II. (ECF No. 29, PageID.151, 158.)

At Step I, Hamilton grieved Defendants Perry, Lankanen, Johnson, Zonza, Nichols, Baldini, and Voeks for use of excessive force while escorting him to his cell and for retaliation. (ECF No. 29-3, PageID.179.) The Step I grievance in MBP-1035 states:

**PRISONER/PAROLEE GRIEVANCE FORM**

Date Received at Step I 10/19/2023 OCT 19 2023 Grievance Office Marquette Branch Prison Grievance Identifier: MBP/23/10/01035/26A/I

| **Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. | | | | | |
|---|---|---|---|---|---|
| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
| Tony Hamilton | 941610 | mBP | D-B6 | 10-5-23 | 10-6-23 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? I talk to 10-5-23
If none, explain why. The P.C But nothing was resolve

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. on The above Date 10-5-23 in time 2:30 to 2:50 while bang escorted to my cell Sgt perry, C.O laKanen C.O Johnson, C.O Zonza, C.O nichols C.O Baldini, C.O Vocks put me in ankle cuff while posing no threat at all these correction officers took me to my cell in assaulted me. their was no recording Device on scene to Document my action or their action these correction officers violated procedure in protocol this was retaliation, this violates P.D 03.03.130 Paragraph I 6 states staff are prohibited from retaliating against a Prisoner after the assault/attack I had a split chin two Black eyes a Busted nose in crack teeth with Blood everywhere. Sgt perry refuse to provide me with medical attention telling nures kelly let him Bleed out this was Between 2:30 to 3:30 Sgt perry is in violation of P.D 03 03 130 Paragrph H state all ill or injured Prisoner Shall receive prompt medical attention as set for in PD 03.04.125 medical emergencie appropriate staff shall be informed of any special need of [redacted] prisoner Due to physical or mental problems I was left in Belly chains ankle chain for 9 Hours 2:30 to 11:30 by Sgt perry

[signature] Grievant's Signature

(*Id.*)

MBP-1035 was addressed on the merits and denied at Step I. (*Id.*, PageID.180.) The Respondent found that "the staff did not engage in any retaliatory behavior" against Hamilton. (*Id.*) The Response noted that "Hamilton became assaultive towards staff resulting in the use of force" and that the use of restraints was due to the nature of Hamilton's conduct. (*Id.*) The investigation found that "Hamilton was offered to be removed from restraints multiple times" but that he "refused to comply with staff orders." (*Id.*) The Response was returned to Hamilton on October 26, 2023. (*Id.*, PageID.179.)

In his Step II appeal, Hamilton asserted that he was "beat/attack [sic]" by correctional officers and that the Respondent failed to properly review camera footage showing "the cruel action of the correctional officers." (*Id.*, PageID.178.) Hamilton indicated that his Step II appeal was written was November 8, 2023. (*Id.*) But the

Step II Respondent received the appeal on November 14 or November 15, 2023. (*Id.*) Schroeder rejected the Step II appeal as untimely and noted that Hamilton's "Step I response had been returned to [him] on 10/26/2023 and the Step II was received on 11/14/2023" and that Hamilton failed to provide a justification for his failure to submit the appeal within the prescribed time constraints. (*Id.*) The Step II Response was returned to Hamilton on November 16, 2023. (*Id.*) The Step II appeal and Response are shown below:

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Hamilton | 941610 | MBP | DB06 | 10-5-23 | 11-8-23 |

**STEP II** — Reason for Appeal a Decision was made to Deni my Step1 grievance I was Beat/attack while in handcuffs and anklecuffs and Suffer the following injuries two Black eyes a split chin a Busted nose and crack teeth punches was thrown to cause these type of injuries. the footage of the camera will show the crule action of the correctional officers. at no time did I refuse to come out of restrain

**STEP II** — Response

A review of your Step II appeal has been completed. I have also reviewed your Step I grievance and the response. You did not submit your appeal within the time limits listed on the appeal form or within the time limits set forth in PD 03.02.130. "Prisoner/Parolee Grievances". Paragraph JJ states in part "A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response within ten business days after receipt of the Step I grievance". Records indicate that the Step I response had been returned to you on 10/26/2023 and the Step II was received on 11/14/2023. You have provided no valid justification for your failure to submit your appeal within the time constraints clearly stated in the aforementioned policy, therefore it is considered untimely and will be returned to you per policy direction and no response will be forthcoming at this Step.

Date Received by Step II Respondent: 11/15/2023

Sarah Schroeder, Warden — Respondent's Name (Print)
[signature] — Respondent's Signature
11-15-23 — Date

Date Returned to Grievant: 11/16/2023

(*Id.*)

In his Step III appeal, Hamilton stated his basis for the appeal was that "Quentin Bolton said [his] grievance was untimely but the date show 11/8/23." (*Id.*) The Reviewer did not uphold the rejection of MBP-1035 and instead appeared to address the appeal on the merits. The Reviewer denied the appeal at Step III, finding that Hamilton's "issue was in fact considered, investigated, and a proper decision was rendered." (*Id.*, PageID.177.)

In the opinion of the undersigned, the Defendants have not met the Rule 56 standard with respect to their claim that Hamilton failed to exhaust his excessive force claims against Perry, Lakanen, Johnson, Zonza, Nichols, Baldini, and Voeks via MBP-1035. Hamilton discusses his allegations of excessive force at both Step I and Step II. Hamilton also mentions Defendants Perry, Lakanen, Johnson, Zonza, Nichols, Baldini, and Voeks by name at Step I, effectively putting the MDOC on notice of his excessive claims against them. Grievance MBP-1035 was addressed on the merits at Step I. While the Step II appeal was rejected, the language used in the Step III response indicates that MDOC addressed the merits of Hamilton's claim at that point as well. Thus, in the opinion of the undersigned, a genuine issue of fact remains with regard to the question of whether Hamilton properly exhausted his excessive force claims against Defendants Perry, Lakanen, Johnson, Zonza, Nichols, Baldini, and Voeks through MBP-1035. Accordingly, the undersigned recommends that the Court **deny** Defendants' motion with respect to the allegations in Claim 1.

However, the Defendants have shown that Hamilton failed to exhaust any of his claims against Watson, Suvanto, and Schroeder through MBP-1035. None of these Defendants are named at Step I of MBP-1035. Although Hamilton does mention his retaliation claim at Step I, the main issue grieved by MBP-1035 is excessive force. Hamilton's retaliation claim against Watson is therefore unexhausted by MBP-1035. Similarly, Hamilton fails to discuss his claim related to the denial of medical care in MBP-1035. Although Perry is mentioned in the grievance at Step I, it is in connection to Hamilton's excessive force claims.

Accordingly, the undersigned concludes that Defendants have met the Rule 56 standard with respect to Hamilton's denial of medical care claims in MBP-1035.

### C. MBP-1036

Defendants argue that Hamilton did not properly exhaust his claims through MBP-1036 because the grievance (1) failed to name Defendants Lakanen, Perry, Johnson, Voeks, Zorza, Nichols, Balini, Suvanto, or Schroeder, and (2) was rejected as untimely at Step II. (ECF No. 29, PageID.152, 158.)

At Step I, Hamilton grieved Defendant Watson for pushing him as he exited the shower in retaliation for writing a previous grievance against the CO. (ECF No. 29-3, PageID.190.) The contents of the grievance are shown below:

OCT 19 2023 Grievance Office Marquette Branch Prison

Date Received at Step I 10/19/2023 Grievance Identifier: MBP 23 10 01 036 17B

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Tony Hamilton | 941610 | mBp | D-B6 | 10-5-23 | 10-6-23 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? I ~~take~~ 10-5-23
If none, explain why. I talk to the P.C

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. on the above Date 10-5-23 in time 2:30 to 2:40 while being handcuff for shower By officer nichols C.O watson approach my cell confronting me for writing him up. I have multiple grievance pending on officer watson. while steping out the shower C.O watson push me for no reason. retaliation against a inmate fall under Discrimtory Harassment P.D 02 03.109 Paragrph T States if Harassment is alleged to be continuing or the person allegedly need protection the appropriate administrator or their Supervisor shall take immediate action to prevent further Harassment C.O watson is in ~~Violation~~ Violation of P.D 03 03 130 paragrph I 6 State Staff are prohibited from retaliating against a prisoner who refuse to particpate in ~~Part~~ Prohibited Staff conDuct or who files a complaint or cooperate in a investigation of staff conduct

Grievant's Signature

(*Id.*)

MBP-1036 was denied at Step I. (*Id.*, PageID.191.) The Respondent found that as Hamilton exited the shower stall, he "turned towards Officer Watson and stepped into him striking him in the torso while calling out 'crash,'" Watson then

reached out to regain control of Hamilton. (*Id.*) The Respondent concluded that "Hamilton became assaultive towards staff resulting in the use of force." (*Id.*) The Response was returned to Hamilton on October 26, 2026. (*Id.*, PageID.190.)

In his Step II appeal, Hamilton stated that he "had multiple complaints against Officer Watson" and that he had previously "requested for protection for [his] safety and health." (*Id.*, PageID.189.) MBP-1036 was received by the Respondent on November 14 or November 15, 2023. (*Id.*) The Step II appeal was rejected as untimely because it was received more than ten business days after the Step I response was returned to Hamilton and Hamilton failed to give a justification for his failure to submit a timely appeal. (*Id.*)

In his Step III appeal, Hamilton stated that "Quetin Bolton said my grievance was untimely but the date show 11-7-23." (*Id.*) The Reviewer did not uphold the rejection at Step II and appeared to deny the appeal on the merits, finding that Hamilton's "issue was in fact considered, investigated, and a proper decision was rendered." (*Id.*, PageID.188.)

In the opinion of the undersigned, Defendants have failed to show that no genuine issue of material fact remains with respect to the exhaustion of Hamilton's retaliation claim against Watson in MBP-1035. Hamilton named Watson and his retaliation claim against Watson at Step I of the grievance process. Although Hamilton's Step II appeal was rejected as untimely, the MDOC appears to have reviewed Hamilton's Step III appeal on the merits. Accordingly, the undersigned concludes that a genuine issue of material fact remains with respect to whether

Hamilton exhausted his retaliation claim against Watson. Accordingly, the undersigned recommends that the Court **deny** Defendants' motion with respect to the allegations in Claim 2.

**D. MBP-1037**

Defendants argue that Hamilton did not properly exhaust his claims through MBP-1037 because the grievance was rejected as duplicative of grievance MBP-1035. (ECF No. 29, PageID.159–60.)

At Step I, Hamilton grieved Defendants Lakanen, Perry, Johnson, Voeks, Zonza, Nichols, and Balini for use of excessive force while escorting him to his cell on October 5, 2023. (ECF No. 29-3, PageID.195.) The grievance is shown below:

OCT 19 2023

Date Received at Step I 10/19/2023 Grievance Identifier: MBP 23 10 0 03 728 A 1

Grievance Office Marquette Branch Prison

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Tony Hamilton | 941610 | mBP | 941610 D156 | 10-5-23 | 10-6-23 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? I talk to 10-5-23 If none, explain why. The P.C But nothing was resolve.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. on the above Date 10-5-23 in time 2:30 to 2:50 the Following correctional officers escorted me to my cell with handcuff and anklecuff on C.o lakanen put me in my cell close the the Door reopen the Door in proceeded to assault me while Sgt Perry C.o Johnson C.o Vocks C.o zonza C.o nichols C.o Balini hold me Down legs in arms in Body Down these officer proceeded to assault/attack me procedures in protocol ~~violated~~ were violated C.o lakanen reopen the cell Door after He push me in, their was no recording Device on scene to Document the incidente P.D 03.03.130 I 1 states staff are prohibited from retaliating against a prisoner

(*Id.*)

Grievance Coordinator Quentin Bolton stated that MBP-1037 was "rejected" as duplicative of another grievance. (*Id.*, PageID.196.) Bolton stated that "Per PD 03.02,130 duplicate issue grievances will not be processed." (*Id.*) While Bolton's

response initially indicates the grievance was rejected, and thus not reviewed on the merits, Bolton closes the letter stating, "Grievance denied at first step," suggesting the grievance was addressed on the merits. (*Id.*) Bolton's response was returned to Hamilton on October 19, 2023. (*Id.*, PageID.195.)

In his Step II appeal, Hamilton argued that MBP-1037 was not duplicative because it "describe[ed] different acts but the same correctional officers" as his previous grievance. (*Id.*, PageID.194.) The Respondent at Step II stated that Hamilton's "issue regarding Staff Corruption Excessive Use of Force has been address[ed] in grievance [MBP-1035]" and that "[t]he rejection is supported, and [Hamilton's] appeal is denied." (*Id.*) The Step II appeal was returned to Hamilton on November 3, 2023.

Then, in his Step III appeal, Hamilton stated that "Quentin Bolton the grievance coordinator being fully in prejudice," and asserted he "stated that [he] was assaulted/attacked while in handcuffs and anklecuffs." (*Id.*) The Reviewer upheld MBP-1037's rejection. (*Id.*, PageID.193.)

When a grievance is rejected as duplicative, the court must look through that grievance to the prior grievance or grievances filed by the prisoner. *Hardy v. Agee*, No. 16-2005, 3-4 (6th Cir., Mar. 5, 2018) (W.D. Mich. Case No. 2:13-cv-230). To determine whether a duplicative grievance is unexhausted, the Court must compare the later grievance to the earlier grievance. *Reedy v. West*, 2017 WL 2888575 (E.D. Mich. May 5, 2017). If the first grievance or grievances were properly exhausted through each step of the process, the duplicative grievance is also considered

exhausted. *Id*. If the first grievance or grievances were not properly exhausted, then the duplicative grievance is also unexhausted. *Id*.

In the opinion of the undersigned, a genuine issue of fact remains with regard to whether Hamilton properly exhausted his excessive force claims through MBP-1037. Hamilton named Defendants Lakanen, Perry, Johnson, Voeks, Zonza, Nichols, and Balini at Step I of MBP-1037. Hamilton also described his excessive force claims at Step I. MBP-1037 was rejected as duplicative of MBP-1035 under PD 03.02.130 ¶ P.2. As previously discussed above, the undersigned concluded that a genuine issue of fact remains with regard to the question of whether Hamilton properly exhausted his excessive force claims against Defendants Watson, Perry, Lakanen, Johnson, Zonza, Nichols, Baldini, and Voeks through MBP-1035. Thus, for the same reasons, the undersigned concludes that Defendants have not shown that they are entitled to summary judgment on the claims raised in MBP-1037.

**V. Recommendation**

The undersigned respectfully recommends that this Court **grant** the Defendants' motion for summary judgment as to:

1. Hamilton's Eighth Amendment denial of medical care claim against Defendant Schroeder (Claim 4).

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment as to the following claims:

1. Hamilton's First Amendment retaliation claim against Defendant Watson (Claim 2);

2. Hamilton's Eighth Amendment excessive force claims against Defendants Lakanen, Perry, Johnson, Voeks, Zonza, Nichols, and Balini (Claim 1); and

3. Hamilton's Eighth Amendment denial of medical care claims against Defendants Perry and Suvanto (Claim 3).

If the Court accepts this recommendation, Warden Schroeder will be dismissed from the case.

Dated: March 24, 2025

/s/ Maarten Vermaat
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).